UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
Stephen Thomas,

                          Petitioner,        CV-99-5331 (CPS)

    - against -                              MEMORANDUM OPINION
                                             AND ORDER
Thomas Ricks, Superintendent, Upstate
Correctional Facility,

                          Respondent.
----------------------------------------X

SIFTON, Senior Judge.

        Petitioner *pro se* Stephen Thomas, currently

incarcerated in the Elmira Correctional Facility in Elmira, New

York, was convicted by a jury of robbery in the first degree,

robbery in the second degree, assault in the second degree, and

criminal possession of a weapon in the second degree.  Petitioner

was sentenced by the Supreme Court of the State of New York,

Kings County, on December 21, 1989, as a persistent violent felon

to concurrent prison terms of twenty years to life for first-

degree robbery, eight years to life for second-degree robbery and

weapons possession, and six years to life for second-degree

assault.  In September 1999, petitioner petitioned this Court for

a writ of habeas corpus pursuant to 28 U.S.C. § 2254, which was

dismissed in its entirety as time-barred.[1]  *See Thomas v. Ricks,*

_____

    [1] Petitioner subsequently appealed the decision to the Second Circuit;
however an incomplete record was thought to have been transmitted to the Court
of Appeals.  The Second Circuit issued an order stating, in part, that the
Circuit "has not proceeded because the district court has not been able to
locate and transmit to this court the bulk of the district court record." A
later examination by the Clerk's offices of both the District and Circuit
Courts revealed that the balance of the district court record was, in fact,

CV-99-5331 (CPS)(E.D.N.Y. Sept. 27, 2000). The Second Circuit subsequently vacated the decision and remanded to this Court for a determination on the merits.

Petitioner Thomas seeks habeas corpus relief on thirteen separate grounds: (1) the trial judge erroneously charged the jury on flight; (2) the trial judge erroneously failed to give the jury a missing witness instruction; (3) the trial judge improperly allowed the prosecution to cross-examine alibi witnesses concerning their failure to contact the police; (4) petitioner was not given the opportunity to testify before the grand jury; (5) petitioner was denied an adequate opportunity to cross-examine witnesses at trial; (6) petitioner was denied effective assistance of trial counsel; (7) the police violated state laws in arresting petitioner; (8) the prosecutor made improper remarks during opening statements; (9) the trial court's *Sandoval* ruling concerning the admissibility of prior crimes was improper; (10) a mistrial should have been declared because of "prejudicial acts" at trial, including the trial judge's allegedly hostile manner; (11) the trial court improperly failed to grant petitioner's request for an adjournment of sentencing; (12) the prosecutor made improper statements during summation;

transmitted and received by the circuit Clerk's Office on March 29, 2001; however, this fact was not known at the time the Circuit Court issued its Order. On July 9, 2002, the Second Circuit issued its Mandate. A record of the state court trial was subsequently provided to the district court by the Kings County District Attorney's Office.

(13) petitioner was denied his right to a speedy trial; and (14) plaintiff was denied the right to effective appellate counsel. For the reasons stated below, the petition is denied.

## BACKGROUND

The following facts are taken from the records of the state proceedings and the parties' submissions in connection with the present motion.

Petitioner Stephen Thomas was arrested and charged in connection with the robbery and assault of Jay Sanders at approximately 4:55 P.M. on July 4, 1988, in front of 301 Dumont Avenue in Brooklyn. Petitioner was charged in Kings County Indictment Number 6663/88 with three counts of Robbery in the First Degree, two counts of Robbery in the Second Degree, one count of Grand Larceny in the Fourth Degree, two counts of Assault in the Second Degree, one count of Criminal Possession of a Weapon in the Second Degree, and one count of Criminal Possession of a Weapon in the Third Degree. Petitioner went to trial before a jury on these charges in Kings County on November 27, 1989.

### *Sandoval* Hearing

Prior to trial, the judge held a *Sandoval* hearing, to consider the extent to which People could cross-examine petitioner about prior misconduct if he testified. The trial court held that the prosecutor could "go into the conviction

[and] the underlying facts" with respect to petitioner's previous convictions on February 21, 1980 for attempted robbery in the second degree, on August 22, 1981 for criminal possession of a loaded weapon and attempted robbery, and on May 19, 1982 for attempted robbery. (Trial Transcript (hereinafter "Tr") 2-4). In so ruling, the trial court found that the "evidence would be relevant and whatever prejudice there may be to the defendant is outweighed by its probative value." (Tr. 4). At the same time, the trial court precluded prosecutor from going into petitioner's prior conviction on June 16, 1980 for attempted criminal possession of a weapon in the third degree but permitted "the People to ask him if he was ever convicted of a felony on that date." (*Id.* 6). The parties dispute whether or not petitioner was present during the *Sandoval* hearing. Petitioner alleges he was not present. The trial transcript does not reflect whether or not petitioner was present during the *Sandoval* hearing. Petitioner did not testify, and no evidence concerning his prior convictions was introduced at trial.

## Prosecution's Case

The prosecution's case consisted principally of testimony from three eyewitnesses, Janie Sanders, the victim Sanders' aunt, and Takasha Shannon and Cyndia Shannon, Sanders'

cousins.  These witnesses testified that they knew petitioner[2]
and were present when the incident occurred.  They testified that
on July 4, 1988, at approximately 4:55 P.M., in front of 301
Dumont Avenue in Brooklyn, petitioner and an unidentified
accomplice approached Jay Sanders.  Petitioner put the gun he was
carrying to the front of Sanders' head and snatched two gold
chains from his neck.  Petitioner then hit Sanders in the head
with his gun, causing him to fall to the ground.  While Sanders
was on the ground, petitioner kicked him in the head, pointed the
gun at him and shot him in the neck.  His accomplice fired
additional shots at Sanders, who survived.  Petitioner and his
accomplice then fled the scene.

Janie Sanders helped Jay Sanders, who was bleeding from
the neck, into the building and onto the first floor landing.
The police and an ambulance arrived, and Jay Sanders was taken to
Brookdale hospital in an ambulance, where his injuries required
surgery and hospitalization.  Police Officer Hurtle testified
that at approximately 5 PM, he responded to a radio report
directing him to go to 301 Dumont Avenue.  When he arrived, he
found Jay Sanders lying in the first floor stairway with a
gunshot wound.  Officer Hurtle recovered "two spent rounds and

---

[2] The witnesses knew petitioner because he had lived in their building
on 301 Dumont and in their neighborhood for several years. However, from the
trial testimony, it appears that petitioner had not lived there since 1978,
and it is unclear when he was last seen by the witnesses prior to the
incident.

one unspent" round in front of the building. (Tr. 118).

<u>Defense's Case</u>

The defense called three alibi witnesses, petitioner's girlfriend at the time of the incident, Sabrina Shirer, Shirer's sister, Michelle Granville, and Renada Braan.  They testified that on the day of the incident, they were with petitioner at a Fourth of July picnic in Prospect Park.  They testified that petitioner arrived at the picnic at 2 p.m. and did not leave until 9 or 10 p.m.  During cross examination, the prosecutor questioned Granville and Braan as to why they did not come forward sooner with their exculpatory information to law enforcement authorities.  The trial court allowed this line of questioning after conducting a *Dawson* hearing.  *See People v. Dawson,* 50 N.Y.2d 311 (1980).

During the *Dawson* hearing, which was held out of the presence of the jury before the defense put on its case, the trial court heard testimony from the defense's three alibi witnesses.  The court determined that each of the witnesses was "aware of the charges pending against the defendant prior to September of 1989...that the witness had reason to recognize the she possessed exculpatory information ...that the witness had a reasonable motive for acting to exonerate the defendant...[and] that the witness was certainly familiar with the means to make such information available to all law enforcement authorities."

(Tr. 204-05). However, prior to allowing prosecution to question

alibi witness as to why they did not come forward sooner, the

trial judge gave the jury the following limiting instruction:

> [A] citizen, particularly this witness, had no legal
> obligation, no moral or civic duty to volunteer exculpatory
> information to the law enforcement authorities via the
> police or the district attorney. However, you may consider
> this witness's prior failure to come forward only insofar a
> it casts doubt on the witness's in court statements by
> reason of its apparent inconsistency"

(Tr. 317, 370, 381).

## Jury Charge

The victim, Jay Sanders, was not present for the trial

and did not testify on behalf of the prosecution. Defense

counsel argued that a missing charge was required because the

People had not exercised due diligence in their attempts to

locate Sanders. Defense counsel contended that an outstanding

bench warrant against Sanders imposed upon the prosecution a

greater duty in their attempts to locate him. (Tr. 298). The

prosecutor argued that a missing witness charge was unwarranted

because the People had exercised due diligence in attempting to

locate Sanders. The prosecutor also argued that no outstanding

bench warrant existed against Sanders, and that in any case, such

a warrant would not impose a duty beyond due diligence. (Tr. 297)

The prosecution provided testimony from investigators

and paralegals who worked at the Brooklyn District Attorney's

office as to the continuing efforts that had been made to locate

Sanders.  In rejecting defense counsel's application for a
missing witness charge, the trial court stated the following:

> [B]ased upon the testimony adduced at this trial, and given
> by Hector Velez, Carlton Starling, Alexandra Sheppard and
> Jeff Stackhouse, this Court finds that the efforts made by
> the District Attorney's Office to make available the
> complainant in this case, Mr. Jay Sanders...rise to the
> level of due diligence.

(Tr. 297).  In addition, the trial court stated, "nevertheless,
the defendant will have a right to comment on the absence of the
complainant as a lack of evidence." (Tr. 297, 398).  The trial
court also allowed defense counsel to "comment on [prosecution's]
efforts to try and find [the complainant]." (Tr. 407).  Defense
counsel did refer to Sanders' absence during summation.

     The trial court granted prosecution's request for a
flight charge, over defense counsel's objection that a flight
charge "is not appropriate for an identification case." (Tr. 404-
05).  In response to defense counsel's objection, the trial court
stated: "It seems to me [a flight charge] is very appropriate
because if [the eyewitnesses] know him they saw him there and
shots were fired and he fled...[It] would show consciousness of
guilt..." (Tr. 405).  The court's jury instruction on flight
stated the following:

> The People contend that at the time or after the complainant
> Jay Sanders was shot, this defendant and another fled from
> 301 Dumont Avenue...I instruct you now under what
> circumstances you may consider such conduct.  Your first
> duty is to decide whether the evidence ... if believed by
> you, does in [e]ffect evidence a consciousness of guilt upon
> the defendant.  You must examine the evidence carefully.

Such conduct may have an innocent explanation. Only if you
find that the conduct of the defendant was solely motivated
by consciousness of guilt you may consider it in weighing
consciousness of guilt. It has slight value standing alone.

(Tr. 467-68). The trial court also included a jury instruction

on identification, which explained that "the defendant has no

burden to prove that he's not the person who committed the crimes

charged. The burden is on the People to prove in fact that he is

the person who committed the crimes charged." (Tr. 489-90).

### Verdict and Sentencing

The jury returned a verdict of guilty of robbery in the

first degree (New York Penal Law "N.Y.P.L." § 160.15[2]"),

robbery in the second degree (N.Y.P.L. § 160.10[2][a]), assault

in the second degree (N.Y.P.L. § 120.05[2]), and criminal

possession of a weapon in the second degree (N.Y.P.L. § 265.03).

Petitioner was sentenced by the Supreme Court of the

State of New York, Kings County, on December 21, 1989. At the

sentencing hearing, defense counsel requested an adjournment of

the sentence so that the probation department could interview

petitioner. On the day his interview was originally scheduled,

petitioner claims he was unable to attend because he had the flu.

(Sent. Tr. 1-2). The court denied the adjournment request.

Defense counsel also requested an adjournment because the

petitioner wanted to get married prior to his sentencing. The

court denied this request, stating that "this case has been

pending for a long time...for many months." (Sent. Tr. 4).

Petitioner was sentenced as a persistent violent felony offender to concurrent prison terms of twenty years to life for first-degree robbery, eight years to life for second-degree robbery and weapons possession, and six years to life for second-degree assault.

### Appeals

On January 23, 1991, before his direct appeal, petitioner moved *pro se* pursuant to N.Y. Crim. Proc. Law § 440.10, to vacate the judgment of conviction.[3]  The Supreme Court, Kings County denied his motion on March 25, 1991.  Leave to appeal to the Appellate Division, Second Department was denied on August 21, 1991, and on January 13, 1992, petitioner's application for leave to appeal to the New York Court of Appeals was "dismissed because the order sought to be appealed is not

---

[3] Petitioner moved to vacate the judgment pursuant to CPL 440.10 on the ground that he was not processed in accordance with CPL 210.10(3), and that this violation of CPL 210.10(3) constituted a violation of his rights to due process and equal protection of the law.  Specifically, petitioner claimed that he was arraigned in the trial court on a sealed indictment, and at "no time was [he] shown a warrant of arrest...no papers were served upon [him] with respect to the sealed indictment or the underlying charge...[he was not] fingerprinted, photographed or processed in connection with the sealed indictment as mandated by C.P.L. 210.10(3)." (Aff. In Support of Motion to Vacate Judgment, at 1).  The court, in denying the motion stated the following:

> [T]he court file belies defendant's claim that he was not processed in accordance with CPL 210.10(3).  In any event, a challenge to the warrant of arrest or to the arraignment which confers the personal jurisdiction of the court could have been mounted prior to trial.  Accordingly, facts in support of the issue raised here could have readily been made to appear on the record in a manner providing adequate basis for review upon an appeal.  Since defendant failed to adduce such facts prior to sentence and there appears to be no reason for his failure to do so, the court elects to exercise its discretion to deny defendant's motion. (CPL.440.10(3)(a)).

(Memorandum, Supreme Court, Kings County, March 25, 1991 at 2).

appealable..." (Resp. Ex. J).

Petitioner, through counsel, subsequently appealed his judgment of conviction, on a variety of grounds, most of which are asserted here.[4] On March 15, 1999, the Appellate Division, Second Department, in a unanimous decision, affirmed petitioner's judgment of conviction. *See People v. Thomas*, 595 N.Y.S.2d 72 (App. Div. 1993). The Appellate Division held that defendant was not entitled to a missing witness charge because "People's evidence showed that a sufficiently diligent effort had been made to locate the witness and he was no longer available to the People" and that the "trial court did not err in permitting the prosecutor to cross examine defendant's alibi witnesses regarding their failure to come forward to law enforcement officials upon learning of the charges against the defendant [because] [t]he prosecutor laid a proper foundation for such questioning." *Id.* The Appellate Division also stated that "we have reviewed the defendant's remaining contentions and find them to be without merit." *Id.* By order dated May 19, 1993, petitioner's application for leave to appeal to the New York Court of Appeals was denied. *See People v. Thomas*, 81 N.Y.2d 1021 (1993). On March 19, 1997, petitioner moved for a writ of error *coram nobis*, claiming ineffective assistance of appellate counsel. On

---

[4] All of the grounds for relief asserted in this petition were raised on direct appeal, except for the ineffective assistance of appellate counsel claim, which petitioner raised in a *coram nobis* petition.

-12-

September 15, 1997, the Appellate Division, Second Department
denied this motion. *See People v. Thomas*, 664 N.Y.S.2d 739 (App.
Div. 1997). On June 24, 1998, petitioner moved to reargue his
*coram nobis* petition. The motion was denied on September 23,
1998.

On August 13, 1999, petitioner petitioned this Court
for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The
petition was dismissed as time-barred. *See Thomas v. Ricks,* CV-
99-5331 (CPS)(E.D.N.Y. Sept. 27, 2000). Petitioner subsequently
appealed; however, as noted above, the record transferred to the
circuit court was deemed incomplete. The Second Circuit
determined that it could not meaningfully review the judgment of
this Court based on an incomplete record, and vacated the
judgment and remanded to this Court for a determination on the
merits.

**DISCUSSION**

<u>28 U.S.C. § 2254--General Principles</u>

*Standard of Review*

Under the Antiterrorism and Effective Death Penalty Act
of 1996 ("AEDPA") a petition for a writ of habeas corpus by a
state prisoner may not be granted with respect to any claim that
has been "adjudicated on the merits" in state court unless the
state court's adjudication resulted in a decision that "was
contrary to, or involved an unreasonable application of clearly

established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254 (d)(1). The Supreme Court has interpreted the phrase "clearly established Federal law" to mean "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Williams v. Taylor,* 529 U.S. 362, 412 (2000); *see also Gilchrist v. O'Keefe*, 260 F.3d 87. 93 (2d Cir.2001).

A state court decision is "contrary to" clearly established federal law where the "state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000)(O'Connor, J., concurring and writing for the majority in this part); *see also George v. Lord,* 334 F.Supp.2d 327, 332 (E.D.N.Y. 2004). A state court decision involves an "unreasonable application" of clearly established Federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Williams,* 529 U.S. at 413. A federal court may not grant relief "simply because [it] concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly;" rather, the state court's

application must have been "objectively unreasonable." *Id.* at

409-11.  In this circuit, the objectively unreasonable standard

of § 2254(d)(1) means that petitioner must identify "some

increment of incorrectness beyond error...[but] the increment

need not be great; otherwise habeas relief would be limited to

state court decisions so far off the mark as to suggest judicial

incompetence." *Sellan v. Kuhlman,* 261 F.3d 303 (2d Cir.2001);

*Cotto v. Herbert,* 331 F.3d 217, 248 (2d Cir.2003).

     This standard of review applies whenever the state

court has adjudicated the federal claim on the merits, regardless

of whether the state court has expressly referred to federal law

in its decision.  As the Second Circuit explained in *Sellan*:

> For the purposes of AEDPA deference, a state court
> adjudicate[s] a state prisoner's federal claim on the merits
> when it (1) disposes of the claim "on the merits," and (2)
> reduces its disposition to judgment.  When a state court
> does so, a federal habeas court must defer in the manner
> prescribed by 28 U.S.C. § 2254(d)(1) to the state court's
> decision on the federal claim--even if the state court does
> not explicitly refer to either the federal claim or to
> relevant federal case law.

*Id.* at 312; *accord Early v. Packer,* 537 U.S. 3, 8 (2002); *Dalio*

*v. Spitzer,* 343 F.3d 553, 560 (2d Cir. 2003); *Francolino v.*

*Kuhlman,* 365 F.3d 137, 141 (2d Cir. 2004)(Where "the Appellate

Division concluded its opinion by stating that it has 'considered

and rejected defendants' remaining claims," AEDPA deference

applies.).  "Federal claims which have not been adjudicated on

the merits are reviewed under the *de novo* pre-AEDPA standard."

*George,* 334 F.Supp.2d at 333; *citing Washington v. Schriver,* 255 F.3d 43 (2d Cir.2001); *Cotto v. Herbert,* 331 F.3d 217, 230 (2d Cir.2003). In addition, a state court's determination of a factual issue is "presumed to be correct," and that presumption may be rebutted only "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Figueroa v. Grenier,* 2005 WL 249001, at * 6 (S.D.N.Y. 2005).

*Procedural Default*

Federal habeas review of a claim is generally prohibited if the state court rests its judgment on an independent and adequate state ground. *See Lambrix v. Singletary,* 520 U.S. 518, 522-23 (1997); *Coleman v. Thomson,* 501 U.S. 722, 729 (1991). Procedural default in state court qualifies as an independent and adequate state ground when "the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar." *Levine v. Comm'r of Corr. Services,* 44 F.3d 121, 126 (2d Cir.1995). A procedural default will bar federal habeas review unless "the habeas petitioner can show cause for the default and prejudice attributable thereto, or demonstrate that failure to consider the federal claim will result in a fundamental miscarriage of justice." *Harris v. Reed,* 489 U.S. 255, 262, 264 n.10 (1989); *accord Coleman,* 501 U.S. at 749-50; *Fama v. Comm'r of Corr. Servs.,* 235 F.3d 804, 809 (2d Cir.2000).

*Exhaustion*

The exhaustion requirement requires the petitioner to have presented to the state court "both the factual and legal premises of the claim he asserts in federal court." *Daye v. Attorney General,* 696 F.2d 186, 191 (2d Cir. 1982)(en banc). Under the AEDPA, a federal district court has the discretion to deny a petition that contains both exhausted and unexhausted claims on the merits. 28 U.S.C. § 2254(b)(2). I find that with respect to each of the claims asserted in this petition, petitioner has exhausted his state court remedies. The merits of petitioner's claims will be addressed in turn.

<u>Jury Charge</u>

*Flight*

Petitioner seeks habeas corpus relief on the grounds that the trial judge erroneously charged the jury on flight, despite the objections of defense counsel. Petitioner contends that "in charging that the assailant's flight from the scene could be considered evidence of his consciousness of guilt..., the judge took the issue of identification away from the jury and insured a guilty verdict in effect by telling the jury not to believe the alibi witnesses." (Pet. Memo, Point One).

To sustain a claim that a jury instruction was improper, a petitioner must show "not merely that the instruction is undesirable, erroneous, or even universally condemned, but

that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." *Cupp v. Naughten,* 414 U.S. 141, 146 (1973); *accord Davis v. Strack,* 270 F.3d 111, 123 (2d Cir.2001).  An improper charge will be found to violate a petitioner's constitutional rights where "there is a reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence," *Boyde v. California,* 494 U.S. 370, 380 (1990), or "violates the Constitution." *Estelle v. McGuire,* 502 U.S. 62, 72 (1991).  "[A] single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *Cupp,* 414 U.S. at 146-47; *citing Boyd v. United States,* 271 U.S. 104, 107 (1926).  An allegedly erroneous jury instruction will form the basis for issuance of a writ of habeas corpus only if the instruction, when viewed in the context of the entire trial, "so infected the entire trial that the resulting conviction violated due process." *Cupp,* 414 U.S. at 400.

In this case, the disputed charge fails to qualify for habeas relief under these standards.  It is, first of all, unlikely that the jurors interpreted the trial court's instructions on flight in a way that prevented consideration of identification evidence.  The trial court's instruction regarding flight contained the following caution:

> You must examine the evidence carefully.  Such conduct may
> have an innocent explanation.  Only if you find that the
> conduct of the defendant was solely motivated by
> consciousness of guilt you may consider it in weighing
> consciousness of guilt. It has slight value standing alone.

(Tr. 468).  Thus, the instruction made clear that conduct

evidencing consciousness of guilt may have an innocent

explanation and could not be the basis of a finding of guilt

standing alone.  *See e.g. Figueroa,* 2005 WL at *12 ("This was

more than sufficient to afford [defendant] due process.").

Moreover, the charge to the jury included a lengthy

identification charge, which made clear the prosecution's burden

of proving that defendant was in fact the person who committed

the crimes charged:

> I instruct you further that the defendant has no burden to
> prove that he's not the person who committed the crimes
> charged.  The burden is on the People to prove in fact that
> he is the person who committed the crimes charged,
> Therefore, if you do not credit or even if you in fact
> disbelieve the testimony of the alibi witnesses, People must
> nevertheless prove to your satisfaction beyond a reasonable
> doubt that the defendant is the person who in fact committed
> the crimes charged before you may find him guilty...

(Tr. 489-90).  In addition, the jury heard ample testimony from

defense witnesses regarding the alibi defense, and defense

counsel commented on the issue of identification and the

prosecution's burden during summation.  Viewing the flight charge

in the context of the overall charge and the entire trial, I find

no merit to petitioner's contention that the alleged error "took

the issue of identification out of the hands of the jury and

ensured a guilty verdict." Nor can it be said that the flight
charge, when viewed in the context of the entire trial, "so
infected the entire trial that the resulting conviction violated
due process." *Cupp,* 414 U.S. at 400.

*Missing Witness Charge*

Petitioner also claims that the trial judge improperly
failed to give the jury a missing witness instruction with
respect to Jay Sanders, as requested by defense counsel.
However, petitioner fails to demonstrate that a missing witness
instruction was appropriate under the circumstances.

A trial court's failure to give a missing witness
instruction, like any jury instruction, does not raise a
constitutional issue and cannot serve as the basis of habeas
relief unless the failure "so infected the entire trial that the
resulting conviction violates due process." *Cupp,* 414 U.S. at
147; *see also Nieves v. Fischer,* 2004 WL 2997860*,* at *8 (S.D.N.Y.
2004). "Whether a missing witness charge should be given lies in
the sound discretion of the trial court." *Reid v. Senkowski,* 961
F.2d 374, 376 (2d Cir.1992). Further, "decisions in this area
will rarely support reversal or habeas relief since reviewing
courts recognize the aura of gamesmanship that frequently
accompanies requests for a missing witness charge as to which the
trial judge will have a surer sense than any reviewing court."
*Malik v. Kelly,* 1999 WL 390604, at *7 (E.D.N.Y. 1999), *quoting*

*United States v. Torres,* 845 F.2d 1165, 1171 (2d Cir.1988).

To warrant a missing witness charge under New York law, the party requesting the charge must show that (1) the uncalled witness is knowledgeable about a material issue upon which evidence is already in the case, (2) the witness would naturally be expected to provide non-cumulative testimony favorable to the party who has not called him, and (3) the witness is available to such a party. *See People v. Gonzalez,* 68 N.Y.2d 424, 427 (1986). A missing witness charge should not be given where the government can show that "the witness' whereabouts are unknown and that diligent efforts to locate him have been unsuccessful." *Id.* at 428; *see also People v. Griffin,* 100 A.D.2d 659, 660 (3d Dep't 1984).

In this case, there is ample evidence that the individual in question, Jay Sanders, was unavailable and that the prosecution made diligent efforts to locate him which were unsuccessful. Two investigators from the district attorney's office testified that they had made several visits to two known addresses of the witness, the address of the witness' mother, and left several subpoenas. (Tr. 267-68, 274-75). Paralegals from the District Attorney's office testified that they contacted several of Jay Sanders' family members to determine where he was, sent him mailgrams, checked with the postal inspector to see if he had given any forwarding address because he was not living at

the two addresses on file for him, checked a number of hospitals
in Brooklyn and Manahattan, the morgue, did city and state
correctional checks, and had subpoenas issued directing that he
come to court. (Tr. 280-83). In rejecting defense counsel's
application for a missing witness charge, the trial court stated
that based upon the testimony adduced at trial, the prosecution's
efforts to make Jay Sanders available "rise to the level of due
diligence." (Tr. 297).

In addition, the trial court permitted defense counsel
to comment on Sanders' absence during his summation, "making
reversal particularly inappropriate in this case." *Nieves,* 2004
WL 2997860, at *9; *Malik,* 1999 WL, at *7; (Tr. 297, 398). The
trial also permitted defense to comment on the People's efforts
to make the complaining witness available to testify at this
trial. (Tr. 410). Given these facts, petitioner fails to
demonstrate that a missing witness instruction was appropriate.

### Prosecution's Cross Examination of Alibi Witnesses

Petitioner argues that he is entitled to habeas relief
on the ground that the trial judge improperly allowed the
prosecution to cross-examine alibi witnesses concerning their
failure to come forward upon learning of the charges against
petitioner. The Appellate Division denied this claim on the
merits, stating:

> The trial court did not err in permitting the prosecutor to
> cross-examine the defendant's alibi witnesses regarding

> their failure to come forward to law enforcement officials
> upon learning of the charges against the defendant.  The
> prosecutor laid a proper foundation for such questioning
> (*see People v. Dawson,* 50 N.Y.2d 311; *People v. Davis*, 172
> A.D.2d 553).  Moreover the court instructed the jury that
> the witnesses were not obligated to come forward (*see,
> People v. Dawson, supra*).

*See People v. Thomas*, 595 N.Y.S.2d 72 (App. Div. 1993).

Under New York Law, while a witness has no obligation
to volunteer exculpatory information to police officers, a
witness's previous silence may be used to impeach her testimony
at trial in appropriate circumstances, such as where she is a
family member or close friend of the defendant.  *See Dawson,* 50
N.Y.2d at 317-18 (When the witness is a "friend or loved one,"
the "natural impulse of [such] a person possessing exculpatory
information would be to come forward...In such situations, the
failure to speak up...might well case doubt upon the veracity of
the witness's exculpatory statements at trial.").  In order for a
prosecutor to cross-examine a witness about her failure to come
forward before trial, a proper foundation must be laid. *Id.* at
321.  The prosecution must demonstrate that: "[1] the witness was
aware of the nature of the charges pending against defendant, [2]
had reason to recognize that he possessed exculpatory
information, [3] had a reasonable motive for acting to exonerate
the defendant, and, finally, [4] was familiar with the means to
make such information available to law enforcement authorities."
*Id.* at 321, n.4.

Here, prosecution questioned alibi witnesses Michelle Granville and Renada Braan about why they did not come forward sooner with exculpatory information.[5]  However, prior to doing so, the prosecutor laid a proper foundation under the *Dawson* standard.  The prosecutor brought out during cross-examination that (1) Granville and Braan were aware of the nature of the charges against Thomas (Tr. 317, 378); (2) they had reason to know they possessed exculpatory information (Tr. 317, 379); (3) they were friends with Thomas and would have a reasonable motive for acting to exonerate him (Tr. 312-14, 371-72); (4) they were familiar with the means to make such information available to law enforcement authorities (Tr. 316-17, 379-81).  Moreover, the judge *sua sponte* informed the jury that a citizen "ha[s] no legal obligation, no moral or civic duty to volunteer exculpatory information to the law enforcement authorities via the police or the District Attorney...[and that] they may consider the witness's prior failure to come forward only insofar as it may cast doubt on the witness's in court statements by reason of it apparent inconsistency" (Tr. 317-18).  Such an instruction is consistent with the holding in *Dawson,* 50 N.Y.2d at 322-23.  The petitioner has failed to show that the trial judge improperly allowed the prosecution to cross-examine alibi witnesses.

---

[5] The prosecutor did not cross-examine Shirer about her failure to come forward.

## Grand Jury

Petitioner argues that he is entitled to habeas relief because he was not given the opportunity to testify before the grand jury. Petitioner states that given "the failure to provide [him] with an opportunity to testify before the grand jury, C.P.L. 190.50 was violated and...the indictment should be dismissed." (Pet. Memo, Point Four).

"There is no federal constitutional right to a grand jury in a state criminal proceeding. The right to a grand jury is a matter of New York State law and as such, is not reviewable on a petition for habeas corpus." *Mirrer v. Smyley,* 703 F.Supp. 10, 11-12 (S.D.N.Y.), *aff'd*, 876 F.2d 890 (2d Cir.), *cert. denied.*, 493 U.S. 850 (1989). In *Lopez v. Riley,* 865 F.2d 30 (1989), the Second Circuit concluded that "specified claims of deficiencies in state grand jury proceedings" are generally not cognizable in a habeas corpus proceeding. Moreover, where a defendant is convicted by a jury, as is the case here, "any error in the grand jury proceeding...is rendered harmless" and is "a *fortiori* foreclosed in a collateral attack brought in a federal court." Thus, petitioner's claim that he was denied the right to testify before the grand jury is not cognizable on habeas review. *See e.g. Aponte v. Edward,* 2000 WL 10217, at *3 (S.D.N.Y. 2000); *Montalvo v. Annetts,* 2003 WL 22962504, at *17 (S.D.N.Y. 2003).

## Defendant's Cross Examination of Witnesses

Petitioner argues he was denied an adequate opportunity to cross-examine witnesses. Specifically, petitioner claims that the trial judge improperly prevented his lawyer from cross-examining Ms. Sanders "as to what Jay Sanders had told Dwayne Sanders just before the alleged attack," (Tr. 56) and as to Jay Sanders' prior possession of a gun. (Pet. Memo, Point Five). Petitioner also claims that trial judge improperly "refused defense counsel's application to call Detective Derita and Detective Schrader as witnesses (Tr. 128-33) and prevented defense counsel "from cross-examining people's witnesses as to the outstanding bench warrant against complainant Jay Sanders, and why, in view of this fact, greater efforts were not made to locate and secure the complainant so he could testify at trial." (See Pet. Memo, Point Five; Tr. 249-55). Because the Appellate Division reviewed these claims and found them "to be without merit," the decision of the state court is entitled to deference under the AEDPA. *See Sellan,* 261 F.3d at 312; *Francolino*, 365 F.3d at 141.

The Confrontation Clause of the United States Constitution states in relevant part that "the accused shall enjoy the right...to be confronted with the witnesses against him..." U.S. Const. amend. VI. The right of confrontation encompasses the right to cross-examine witnesses. *See Pointer v. Texas,* 380 U.S. 400, 404 (1965). However, "the Confrontation

Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent the defense might wish." *Delaware v. Fensterer,* 474 U.S. 15, 20 (1985). "Trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or marginally relevant." *Delaware v. Van Ardsall,* 475 U.S. 673, 679 (1986).

Examining each of petitioner's claims under the appropriate constitutional standard, I conclude they lack merit. First, the trial court properly sustained prosecution's objection to defense counsel's asking Janie Sanders "what she had heard Jay Sanders say to Dwayne Sanders before the attack" (Tr. 56), because the question sought to elicit hearsay that did not fall within an exception to the hearsay rule. Petitioner also contends that the trial court improperly sustained the prosecutor's objections to defense counsel's questioning Janie Sanders if she "had ever seen Jay Sanders possess any guns at any time prior to July 4, 1988"[6] (Tr. 63). Since petitioner did not

---

[6] Contrary to petitioner's claim, the defense did not ask whether the alleged victim was in possession of a gun "just prior" to the alleged incident. (Pet. Memo, Point Five). Also, contrary to petitioner's claim, the trial court did not sustain prosecution's objection to defense's asking Takasha Shannon if "Jay got the shotgun" during this incident. (Tr.87-88).

raise an issue of self-defense in this case, but rather argued mistaken identity, whether or not the victim ever possessed guns prior to the incident was of marginal relevance and in all likelihood prejudicial.

Petitioner next argues that the trial court improperly precluded defense counsel from cross-examining the People's witnesses about an alleged bench warrant for Jay Sanders. Here again, the trial judge properly precluded defense counsel from questioning prosecution's witnesses because of the marginal relevance of the information sought to be elicited by the question and its potential prejudice. (Tr. 155).

Petitioner further claims that the court improperly refused defense counsel's request to call Detective Schrader and Detective Derita as witnesses. During defense's cross examination of Officer Hurtle, he testified that when he arrived on the scene, Jay Sanders was sitting on the stairs in the landing by himself, "except for, there were other people except for I guess his friends or whatever, tenants." (Tr. 124). After the witness and jury were excused for the day, defense counsel asked to call Detective Derita in order to impeach the credibility of Officer Hurtle with regard to who was present when the police first arrived at 301 Dumont Avenue. Derita had prepared a police report which stated that Hurtle and his partner Officer Schrader did not see anyone else in the building (Tr.

128).  When the trial court questioned defense counsel further as

to his reason for wanting to recall the witness, defense counsel

changed his tack and stated that he wanted to recall the witness

in order to impeach Janie Sanders, who had testified earlier that

she was present when the police arrived on the scene. (Tr. 130-

31).  The trial court denied the request, finding that it was "a

collateral issue...[that] wouldn't rise to the level of a prior

inconsistent statement which would affect or should affect the

credibility of...Janie Sanders."  This ruling was a proper

exercise of the trial court's discretion.  The Appellate

Division's denial of this claim was not an unreasonable

application of clearly established federal law.

<u>Arrest</u>

Petitioner claims that his due process and equal

protection rights were violated because of the police's alleged

failure to follow New York Criminal Procedure Law Sections

160.10(1) and 210.10(3).[7]  Specifically, he claims that he was

---

[7] Section 210.10, sets forth the "methods of securing defendant's
appearance for arraignment upon indictment."  (N.Y. C.P.L. § 210.10).
Subsection 3 provides that where the filing of the indictment constitutes the
commencement of the criminal action:
> [T]he superior court must order the indictment to be filed as a sealed
> instrument until the defendant is produced or appears for arraignment,
> and must issue a superior court warrant of arrest...It must be executed
> in the same manner as an ordinary warrant of arrest, as provided in
> section 120.80 and following the arrest the executing police officer
> must without unnecessary delay perform all recording, fingerprinting,
> photographing and other preliminary police duties required in the
> particular case, and bring the defendant before the superior court.

Section 160.10(1), entitled "Fingerprinting; duties of police with respect
thereto," provides that "following an arrest, or following the

"never formally arrested in this matter [and] he was already in custody when he was charged pursuant to a 'silent indictment';" "he never received a copy of the indictment;" "he never learned of the substance of the within charges until April 1989," and "no arrest records, fingerprints, or mugshots were taken with respect to his case," in contravention of Sections 160.10(1) and 210.10(3). (Pet. Memo, Point Seven).

Generally, "claims based on purported failures to comply with state procedures are not cognizable on federal habeas review," since the habeas statute only applies to violations of the Constitution, treaties or federal laws. *Bynum v. Duncan,* 2003 WL 296563, at *7 (S.D.N.Y. 2003); *Quiroz v. Wawrzaszek,* 749 F.2d 1375, 1377 (9th Cir.1984), *cert denied* 471 U.S. 1055 (1985). While petitioner makes general references to due process and equal protection for the alleged failure to follow state procedures, the only potential federal claims stated in this section arise under the Fourth Amendment. *See e.g. Gumbs v, Kelly,* 2000 WL 1172350, at * 9-10 (S.D.N.Y. 2000); *Marsh v. Duncan,* 2004 WL 86412, at *8 (E.D.N.Y. 2004). Under *Stone v. Powell,* 428 U.S. 465 (1976), habeas review of Fourth Amendment claims are precluded if the state has provided the petitioner

---

arraignment...the arresting or other appropriate police officer or agency must take or cause to be taken fingerprints of the arrested person or defendant." Moreover, where fingerprints are required, "photographs...of the arrested person...may also be taken." (NYCPL 160.10(3)).

with the opportunity for full and fair litigation of his or her claim.  *Id.* at 494.

In this case, the state provided petitioner with a full and fair opportunity to litigate these Fourth Amendment claims. Petitioner first presented these claims in his January 23, 1991 motion pursuant to N.Y. Crim. Proc. Law § 440.10, to vacate the judgment of conviction.  The trial court denied the motion.  (*See* Memorandum, Supreme Court, Kings County, March 25, 1991, Resp. Ex. E).  Petitioner subsequently raised these claims on direct appeal, which the Appellate Division denied as being "without merit." *People v. Thomas,* 595 N.Y.S. 2d 72 (App. Div. 1993); *see also Capellan v. Riley,* 975 F.2d 67, 70, n.1 (2d Cir. 1992)(noting that the Appellate Division's denial of a Fourth Amendment claim without comment did not deprive petitioner of an opportunity to litigate the claim).

Even if review of these claims was not precluded, petitioner has failed to show that the state procedures he invokes were violated.  At the time of the indictment, petitioner was already in custody on a parole warrant unrelated to this case. (T. 159).  The trial court, in its denial of petitioner's motion to vacate the conviction, determined that "the court file belies defendant's claim that he was not processed in accordance with CPL 210.10(3)." (Memorandum, Supreme Court, Kings County,

March 25, 1991, Resp. Ex. E, at 2).[8]  Petitioner provides no
evidence to support a contrary factual finding.  In addition,
contrary to petitioner's assertions, neither Section 210.10(3)
nor 160.10 requires that photographs of a defendant be taken or
that a copy of the indictment be provided to the defendant.[9]

<u>Ineffective Assistance of Trial Counsel</u>

Petitioner seeks habeas corpus relief on the ground
that he was denied effective assistance of trial counsel.
Specifically, he claims that his trial counsel, Alan Rosenberg,
was ineffective because he (1) improperly advised the alibi
witnesses not to speak to the police or the district attorney
when they first learned that defendant had been incarcerated, and
(2) failed to raise at trial the issue of People's alleged
violation of New York Criminal Procedure Law §§ 160.10 and
210.10.  (Pet. Memo, Point Six).  Because this claim was
determined to be "without merit" by the Appellate Division,
habeas relief is available only if the state court's
determination was "contrary to, or involved an unreasonable
application of clearly established Federal law."  28 U.S.C. §
2254(d); *Williams,* 529 U.S. at 405-406; *Aparicio,* 269 F.3d at 93.

_____

[8] Petitioner's Supreme Court file includes the following: a Superior
Court arrest warrant, signed by J. Owens and secured prior to the arrest of
the defendant and a copy of defendant's fingerprint card.  (Resp. Memo. at
31).  Petitioner was arraigned in Supreme Court on October 4, 1998.

[9] As appears from the trial record, petitioner's attorney did have a
copy of the indictment, at least as of October 4, 1988, the date of the
arraignment. (Tr. 166).

The relevant "clearly established" federal law is the standard set forth in *Strickland v. Washington,* 446 U.S. 668 (1984). In *Strickland,* the Supreme Court held that to make a successful claim for ineffective assistance of counsel, a habeas petitioner must show that: "(1) counsel's performance fell below an objective standard of reasonableness, and (2) that there is a reasonable probability that, but for the deficiency, the outcome of the proceeding would have been different." *Id.* at 688. The Supreme Court has defined "reasonable probability" as a "probability sufficient to undermine confidence in the outcome" of the trial. *Id.* at 694.

In adjudicating an effectiveness claim, a court need not address the "performance" prong before proceeding to the "prejudice" prong, and may dismiss a claim for lack of prejudice if that is the easier course. *Id.* at 697. "[J]udicial scrutiny of a counsel's performance must be highly deferential," and a court must "evaluate the conduct from counsel's perspective at the time." *Id.* at 689; *see also Bell v. Cone,* 535 U.S. 685, 698 (2002). Moreover, "for [petitioner] to succeed, he must do more than show he would have satisfied *Strickland's* test if his claim were being analyzed in the first instance, because under § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state court decision applied *Strickland* incorrectly...rather he must show that the

[Appellate Division] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Bell v. Cone,* 535 U.S. 685, 698-99 (2002).

*Instruction to Alibi Witnesses*

Petitioner contends that trial counsel provided ineffective assistance because he instructed alibi witnesses not to speak to law enforcement authorities after they learned of his incarceration. Petitioner argues that this resulted in prejudice because "the credibility of the alibi witnesses was destroyed when prosecutor questioned them as to why they had not volunteered their exculpatory evidence sooner." (Pet. Memo, Point Six).

As a factual matter, petitioner's assertion that Rosenberg told alibi witnesses "not to speak to law enforcement" is contradicted by the trial record. During the *Dawson* hearing, which was held outside the jury's presence, alibi witness Sabrina Shirer testified that when Rosenberg first discussed the case with her in September 1989, he told her "not to speak to the police" but told her it was "up to me [Shirer]" whether or not to speak to the District Attorney. (Tr. 187-88).[10] The second alibi

_____

[10] During subsequent questioning by defense counsel, Shirer answered "yes" to the question, "[a]nd you testified that I [Mr. Rosenberg] told you that you could talk to the police and the District Attorney if you wanted to?" (T. 192). After the witness was excused, Mr. Rosenberg stated, "I don't think she [Ms. Shirer] was exactly clear on the lawyer's language because [it was] a standard *Dawson* warning that I gave and what I gave in this case is that I can't tell you that you cannot speak with the District Attorney's office, but I advise you as Mr. Thomas's lawyer that it's not in his best interest to do

witness, Michelle Granville, testified during the *Dawson* hearing
that when Rosenberg first discussed this case with her in June
1989, he informed her that she "didn't have to talk to the
District Attorney." (Tr. 218). The third Alibi witness, Renada
Braan, testified that when Rosenberg first discussed this case
with her in October 1989, he did not advise her about "not
talking to the police or the District Attorney's Office," (Tr.
236), but that Rosenberg told her she "might be asked questions
by the District Attorney and [she] could feel free to answer or
not answer." (Tr. 240). Thus, according to the trial record,
only Shirer was explicitly instructed by Rosenberg not to speak
to the police.

Petitioner fails to show that trial counsel's decision
to give Shirer such an instruction was, in and of itself,
objectively unreasonable. As explained in *Strickland,* "a court
must indulge a strong presumption that counsel's conduct falls
within the wide range of reasonable professional assistance; that
is the defendant must overcome the presumption that, under the
circumstances, the challenged action 'might be considered sound
...strategy.'" *Strickland,* 466 U.S. 668 at 689. Even assuming
that Rosenberg's instruction fell below an objective standard of
reasonableness, petitioner fails to show prejudice, i.e. that but
for the instruction to Shirer, it is reasonably probable that the

so." (Tr. 203).

outcome of the trial would have been different.  Under New York
State law, if it is determined that a witness refrained from
speaking under the advice of defense counsel, cross "examination
on the issue of the witness's postconsultation silence would be
improper and could well result in a mistrial."  *Dawson,* 50 N.Y.2d
at 323.  In this case, because Shirer testified during the *Dawson*
hearing that Rosenberg advised her not to go to the police, the
prosecutor never questioned Shirer during cross-examination about
her failure to come forward prior to trial.  Moreover, Rosenberg
did not contact any of the witnesses until the latter part of
1999.  Thus, regardless of defense counsel's instructions to the
alibi witnesses, the prosecutor, upon laying a proper foundation
under *Dawson*, would nonetheless have been able to question them
about their pre-consultation silence.  Petitioner thus fails to
show prejudice.  Accordingly, I conclude that the Appellate
Division's denial of this claim was not an unreasonable
application of *Strickland*.

### *Arrest Procedures*

Petitioner contends that trial counsel was ineffective
for failing to raise at trial the issue of People's alleged
violation of New York Criminal Procedure Law §§ 160.10 and
210.10.  Petitioner argues that if trial counsel had "moved to
dismiss the case because of CPL 210.10(3), defendant would never
have been convicted."  (Pet. Memo, Point Six).

Petitioner's argument fails the *Strickland* test because even assuming that his trial counsel was ineffective is failing to raise the issue at trial, there was no likelihood that the trial court would have granted dismissal of the case given the presence of evidence in the Supreme Court file which demonstrated that proper state arrest procedures--the issuance of an arrest warrant, finger-printing, arraignment--were, in fact, followed. Accordingly, the Appellate Division's denial of this claim was not an unreasonable application of *Strickland*.

### Improper Statements by the Proscutor

Petitioner claims he is entitled to habeas relief because of the following remarks made by the prosecutor during his opening statement:

> And what happened on July 4th of 1988 in front of 301 Dumont
> Avenue right here in Kings County?  There were fireworks on
> that particular day ladies and gentlemen, but not the kind
> you see over the New York Harbor on television.  And not the
> kind you see over the Statue of Liberty...
> The only fireworks you saw here on this particular day
> [were] the explosions of the bullets coming from the gun
> that was fired by the defendant and his accomplice into Jay
> Sanders after they had taken some gold chains which he was
> wearing around his neck.

(Tr. 19-20).  Petitioner argues that because these remarks were "made as if [the prosecutor] was an actual witness to said crime, [the] remarks invaded defendant's right to a fair trial."  (Pet. Memo, Point Eight).  Petitioner also claims that the prosecutor made the several improper and prejudicial remarks during summation. (Pet. Memo, Point Twelve).  Because these claims of

prosecutorial misconduct were determined by the Appellate
Division "to be without merit," this Court may grant habeas
relief only if the state court's denial was "contrary to, or
involved an unreasonable application of clearly established
Federal law." 28 U.S.C. § 2254(d); *Sellan,* 261 F.3d at 312.

Prosecutorial misconduct violates a defendant's due
process right only when it is "of sufficient significance to
result in the denial of the defendant's right to a fair trial."
*Greer v. Miller,* 483 U.S. 756, 765 (1987); *accord, United States
v. McCarthy,* 54 F.3d 51, 55 (2d Cir.), *cert. denied,* 516 U.S. 880
(1995). Thus, federal habeas relief is not available on the
basis of improper prosecutorial statements at trial unless "the
misconduct so infected the trial with unfairness as to make the
resulting conviction a denial of due process." *Donnelly v.
DeChristoforo,* 416 U.S. 637, 643 (1974). "It is not enough that
the prosecutor's remakes were undesirable or even universally
condemned." *Darden v. Wainwright,* 477 U.S. 168, 181 (1986).
Rather, a petitioner "must demonstrate that he suffered actual
prejudice because the prosecutor's comments...had a substantial
and injurious effect or influence in determining the jury's
verdict." *Bentley v. Scully,* 41 F.3d 818, 824 (2d Cir.1994). "To
properly evaluate the prosecutor's actions, the alleged misdeeds
must be placed in context, and the severity of the misconduct,
curative measures, and the certainty of conviction absent the

misconduct are all relevant to the inquiry." *Id., quoting Blissett v. LeFevre,* 924 F.2d at 440; *accord, e.g., Greer v. Miller,* 483 U.S. at 766 ("[I]t is important as an initial matter to place th[e] remar[k] in context"); *United States v. McCarthy,* 54 F.3d 51, 55 (2d Cir.1995).

In this case, the prosecutor's conduct does not warrant habeas relief. First, defense counsel immediately objected to the prosecution's disputed opening statement remarks, in response to which the trial court stated: "All right Mr. Singer [prosecutor], limit it to what you expect to prove." (Tr. 19). Moreover, prior to the opening statements of counsel, the trial judge instructed the jury that counsel's opening statements are not evidence. (Tr. 12). Thus, even if the prosecutor's opening statement remarks were improper, the trial court's instruction cured any potential harm created by the remarks. *See e.g. U.S. v. McCarthy,* 54 F.3d at 56. In addition, given that the allegedly improper comments were "short and fleeting, [they were] much less likely to have had a substantial effect on the jury's verdict." *Tankleff v. Senkowski,* 135 F.3d 235, 253 (2d Cir. 1998).

In regard to the prosecutor's summation, his statements that "this case boils down to...whether or not you believe the People's witnesses when they tell you that the defendant Steven Thomas robbed, shot and assaulted Jay Sanders" (Tr. 437) and "the

testimony has show[n] that the defendant took this gun and from

point blank range fired one shot into his [Jay Sanders'] throat"

(Tr. 438), were not improper, but a fair summary of the testimony

given by People's witnesses. *See Garcia v. Greiner,* 2004 WL

943902, at *6 (E.D.N.Y. 2004)("A prosecutor is not prohibited

from graphically summarizing graphic and disturbing testimony").

Moreover, the prosecutor's statements during summation that his

witnesses had no motive to lie (Tr. 439,451) were not improper,

but a fair attempt to rehabilitate the credibility of his

witnesses after defense counsel attacked their credibility in

summation (Tr. 415,420,424). *See Garcia,* 2004 WL at *8.

The prosecutor also described the victim's condition in

the hospital during his summation:

> You heard the testimony of Dr. Topper, two weeks in the
> hospital, four hours of surgery...when he got into the
> hospital through his surgery transfuse seventeen units of
> blood, his chest filled up with blood.

(Tr. 452). Again, a prosecutor is not prohibited from

graphically summarizing disturbing testimony, *see Garcia,* 2004 WL

at *6; *see also Darden,* 477 U.S. at 180 (holding that

prosecutor's comments reflecting an emotional reaction to the

case were not enough to infect the trial with unfairness as to

make the resulting conviction a violation of due process). In

any event, defense counsel objected to the description of the

victim's condition, and the trial court sustained the objection.

(Tr. 452). Finally, petitioner argues that the prosecutor

"overzealously" characterized the case as one of the "People
against the defendant and not a particular individual." (Tr.
452). Defense counsel objected to this comment, and the trial
court sustained the objection. (Tr. 452). Moreover, prior to
the summations, the trial court instructed the jury that
"whatever the attorneys say in summation is not evidence and
furthermore, should they refer to any testimony in this case it
is your recollection which controls." (Tr. 408). Thus even if
the prosecutor's remarks were improper, viewing the conduct at
issue in the context of the overall proceedings and given the
trial court's curative instructions to the jury, it cannot be
said that the misconduct deprived petitioner of a fair trial.

### *Sandoval* Ruling

Petitioner argues that the trial court's *Sandoval*
ruling concerning the admissibility of evidence of prior crimes
was improper because it deprived him of the right to testify.
The "admission of prior conviction for the purpose of impeaching
the defendant has been characterized as evidentiary in nature and
is therefore not redressable in a federal habeas corpus
proceeding absent a showing that the particular errors were of
constitutional magnitude." *Gilbert v. Superintendent of Collins
Correctional Facility,* 2004 WL 287683, at *7 (S.D.N.Y. 2004); *see
also Walton v. Ricks,* 2003 WL 1873607, at *10(S.D.N.Y.2003). In
*Luce v. United States,* 469 U.S. 38 (1984), the Supreme Court held

that a federal district court ruling which permits evidence of
prior conviction for the purpose of impeachment generally does
not reach "constitutional dimensions." *Id.* at 42-43. The Court
further held that, to preserve for review the issue of
admissibility the defendant must actually testify at trial;
otherwise, the harm suffered by defendant would be "wholly
speculative." *Id.* at 41-43.

     The Supreme Court's holding in *Luce* has been applied by
courts in this Circuit to bar federal habeas corpus review of
allegedly erroneous *Sandoval* rulings in cases where the defendant
chose not to testify. *See e.g. Gilbert,* 2004 WL at *7; *McEachin
v. Ross,* 951 F.Supp.478, 481 (S.D.N.Y. 1997)("It is well settled
that a petitioner's failure to testify at trial is fatal to any
claims of constitutional deprivation arising out of a *Sandoval-*
type rulings."). Accordingly, because petitioner elected not to
testify at trial, petitioner's *Sandoval* claim is not an available
ground for federal habeas review.

<u>Sentencing Adjourment Request</u>

     Petitioner argues that the trial court improperly
denied his request for an adjournment of sentencing. Trial
courts are afforded great discretion as to whether to grant a
continuance. *See Morris v. Slappy,* 461 U.S. 1, 18 (1983); *Avery
v. State of Alabama,* 308 U.S. 444, 446 (1940)("[D]isposition of a
request for continuance... is made in the discretion of the trial

judge, the exercise of which will not ordinarily be reviewed.").
On the day of the sentencing hearing, defense counsel requested
an adjournment so that the probation department could interview
petitioner. Petitioner didn't attend his originally scheduled
interview because he had the flu. Petitioner's attorney stated,
"[Thomas] wants to talk to them and he wants to have his
statement be a part of the Probation Report for your Honor's
consideration." (Sent. Tr. 1-2). The sentencing court denied the
adjournment request but afforded petitioner the opportunity to
"make a statement and then we'll add it." (Sent. Tr. 3).

The Appellate Division found petitioner's claim "to be
without merit," and under the AEDPA, the determination is
entitled to deference. *Sellan,* 261 F.3d at 312. The Appellate
Division's determination was not contrary to or an unreasonable
application of federal law. Even reviewing the matter *de novo,* I
find that the sentencing court did not abuse its discretion in
denying a continuance, given the fact that the sentencing court
afforded petitioner the opportunity to make the statement that he
had wanted to be part of the Probation Report.

## "Prejudicial Acts" at Trial

Petitioner argues that a mistrial should have been
declared because of the following "prejudicial acts": (1) the
trial court's direct questioning of a witness, harsh tone of
voice and alleged hostility toward defense counsel; (2) the trial

court's allowing the prosecution to question eyewitnesses about the complainant's condition after being shot; (3) the trial court's allowing the prosecutor to question defense's alibi witness, Michelle Granville, during cross examination about the location of Prospect Park in relation to Dumont Avenue; (4) the cross-examination testimony of prosecution witness Janine Sanders, which revealed that defendant had previously been in jail. (Pet. Memo, Point Eleven). Because these claims were considered by the Appellate Division and found "to be without merit," the state court's determination is entitled to AEDPA deference. *See Sellan*, 261 F.3d at 141.

*Alleged Bias of the Trial Judge*

The Due Process Clause of the Fourteenth Amendment requires "a fair trial in a fair tribunal before a judge with no actual bias against the defendant or interest in the outcome of his particular case." *Bracy v. Gramley,* 520 U.S. 899, 904 (1997)(quoting *Winthrow v. Larkin,* 421 U.S. 35, 46 (1975)). However, very rarely does a judge's conduct rise to the level of a due process violation:

> Judicial remarks during the course of trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge...

*Litekey v. United States,* 510 U.S. 540, 555-56 (1994). Habeas relief on the ground of judicial misconduct at the state trial level is warranted only if the federal court determines that the

alleged improprieties, taken in the context of the total trial,
denied a defendant fundamental fairness. *Daye v. Attorney Gen.*,
712 F.2d 1566, 1572 (2d Cir.1983); *see also United States v.
DiPaolo*, 804 F.2d 225, 232 (2d Cir.1986)(finding that examination
of the "transcript as a whole in indicate that in no way was the
judge's behavior so prejudicial that it denied the defendant a
fair, as opposed to the perfect, trial.")

 A review of the trial record indicates that the trial
court's conduct never approached the level of impropriety that
would constitute a deprivation of petitioner's right to a fair
trial. The occasional expressions of judicial impatience cited
by petitioner do not rise to the level of a due process
violation. Moreover, the trial court's questioning of defense
witness Renada Braan during cross examination as to whether it
was "possible that [Thomas] wasn't in your view during the day"
(Tr. 387) was an "ordinary attempt to clarify the testimony of
witnesses and to keep the proceedings moving at an acceptable
pace." *Fauntleroy v. Artuz,* 2003 WL 22670906, at *6 (E.D.N.Y.
2003). Moreover, the trial court explicitly instructed the jury
that:

> [Y]ou are not to consider anything I've said during the
> trial or any questions that I've asked...as indicative that
> I have any opinion on this case one way or the other.

(Tr. 455). Thus, the trial court's conduct did not deny
petitioner's right to a fair trial.

*Trial Court's Evidentiary Rulings*

In general, "erroneous evidentiary rulings do not automatically rise to the level of constitutional error sufficient to warrant issuance of a writ of habeas corpus." *Taylor v. Curry,* 708 F.2d 886, 891 (2d Cir.1983), *cert. denied,* 464 U.S. 1000 (1983). A state court's erroneous ruling on an issue of state evidentiary law warrants habeas relief only where the petitioner "can show that the error deprived him of a fundamentally fair trial." *Zarvela v. Artuz,* 364 F.3d 415, 418 (2d Cir.2004)(citing *Rosario v. Kuhlman,* 839 F.2d 918, 925 (2d Cir.1988); *see also Collins v. Scully,* 755 F.2d 16, 18 (2d Cir.1985). The erroneous admission of evidence rises to a deprivation of due process under the Fourteenth Amendment only if "the erroneously admitted evidence, viewed objectively in light of the entire record before the jury, was sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it." *Collins,* 755 F.2d at 19. In other words, the evidence must have been "crucial, critical, highly significant." *Id.*

Petitioner claims that the trial court improperly allowed prosecution to question eyewitnesses Janie Sanders and Takasha Shannon about Jay Sanders's physical condition immediately after being shot and at the hospital on the following day (Tr. 39-40,43,83,104), over the objections of defense

counsel. Petitioner has not demonstrated that the ruling was "erroneous" let alone that the ruling denied him a fair trial. The testimony as to Jay Sanders's injuries was relevant and properly admitted given that certain of the charges against petitioner, such as Robbery in the Second Degree and Assault in the Second Degree, contained a physical injury element. (Tr. 479, 483).

Petitioner also claims that the trial court improperly allowed prosecution, over the objection of defense counsel, to question defense witness Michelle Granville about the possibility of exiting Prospect Park towards Empire Boulevard, and then heading to Dumont Avenue (Tr. 323). Petitioner argues that such questioning was "irrelevant, immaterial and inflammatory because when one exits Prospect Park at Empire Boulevard, one could be heading towards hundreds of locations." (Pet. Memo, Point Eleven). However, during direct examination, Granville testified that the picnic took place in Prospect Park near the entrance at Flatbush Avenue and Empire Boulevard. The prosecutor's questioning on cross-examination was relevant in demonstrating where the picnic site was located in relation to Dumont Avenue, the site of the shooting. Thus, the trial court's ruling was proper and did not deprive petitioner of a fair trial.

Finally, petitioner claims that Janie Sanders's response to a question posed by defense counsel during cross

examination warranted a mistrial.  During defense counsel's
cross-examination of Janine Sanders, he asked her if it was "a
number of years before July 1988 when [she] last saw Stephen
Thomas."  Janie Sanders responded "I saw Stephen Thomas I believe
a couple of months before he...got out of jail." (Tr. 59).
Defense counsel objected, and the trial court sustained the
objection and instructed the jury to "disregard the last
statement." (Tr. 59).  Given the trial court's curative
instruction and viewed objectively in light of the entire record,
petitioner was not deprived of a fair trial.  Accordingly, the
Appellate Division's denial of this claim was not contrary to or
an unreasonable application of clearly established federal law.

## Speedy Trial

Petitioner seeks habeas relief on the ground that he
was denied his right to a speedy trial under New York Criminal
Procedure Law § 30.30.  Petitioner alleges that his trial did not
commence until "late November 1989, almost fourteen months after
the indictment date." (Pet. Memo, Point Thirteen). Respondent
contends that petitioner's claim pursuant to CPL § 30.30 does not
raise a federal constitutional issue. (Resp. Memo at 28).  In so
far as the Appellate Division's denial of the speedy trial claim
was based on a federal constitutional right, it was not contrary
to clearly established federal law.

The determination of whether pretrial delay violates

the Sixth Amendment is governed by *Barker v. Wingo,* 407 U.S. 514, 530 (1972); *see also Davis v. Kelly,* 316 F.3d 125, 127 (2d Cir. 2003). *Barker* identified four factors "courts should assess in determining whether a particular defendant has been deprived of his right[:] Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." 407 U.S. at 533. None of the four factors is alone "a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant" as part of a "difficult and sensitive balancing process." *Davis,* 316 F.3d at 127. I address these factors in turn.

First, the crime for which petitioner was convicted occurred on July 4, 1988. He was taken into custody on July 5, 1988 on a parole warrant unrelated to this case, and indicted on or about September 23, 1988. Trial commenced on November 27, 1989. Much longer delays have withstood constitutional attack. *See e.g. Robinson v. Ricks,* 2004 WL 1638171, at *5 (E.D.N.Y. 2004)(twenty five months from arrest to trial); *Barker,* 407 U.S. 514 (over five years); *Montalvo v. United States,* 862 F.2d 425, 426 (2d Cir.1988)(eight years); *Rayborn v. Scully,* 858 F.2d 84, 89 (2d Cir.1988)(over seven years). Thus, the first factor, the length of the delay weights against petitioner. As to the second

factor, the record is unclear as to who was responsible for the
delay.  Petitioner contends that the delay was "through no fault
of the defendant or defense counsel" and "was chargeable to the
People." (Pet. Memo, Point Thirteen).  However, the trial
transcript reflects statements made by the prosecutor which
indicate that both prosecution and defense counsel were not ready
to go to trial on prior dates in "December, February [and]
March." (Tr. 294).

Furthermore, as to the third factor, petitioner never
moved for dismissal on speedy trial grounds prior to trial.  The
petitioner does not even allege that he was prejudiced by the
delay.  In light of these factors, I find that petitioner's
constitutional rights were not violated, and thus, the Appellate
Division's denial of this claim was not unreasonable.

<u>Ineffective Assistance of Appellate Counsel</u>

Petitioner argues that he was denied effective
assistance of appellate counsel.  Specifically, he claims that
appellate counsel, Alan Schneier, was ineffective for failing to
assert that petitioner's right to be present at the *Sandoval*
hearing was violated.  Petitioner contends that had this argument
been raised, the Appellate Division would have "remanded his case
for a new trial, or at least, a reconstruction hearing." (*Coram
Nobis* Aff. at 3).

Petitioner first raised this argument on his *coram*

*nobis* petition to the Appellate Division, Second Department, which denied relief stating that the "appellant has failed to establish that he was denied the effective assistance of appellate counsel on its merits (*see, Jones v. Barnes,* 463 U.S 745)." (Coram Nobis Decision, 1997 at 1).[11] Given that the decision was on the merits, this Court may grant habeas relief only if the Appellate Division's adjudication was "contrary to, or involved an unreasonable application of clearly established Federal law." *Sellan,* 261 F.3d at 312. The *Strickland* standard applies to appellate as well as trial counsel, and is the relevant "clearly established Federal law." For petitioner to succeed on this claim, he must show that the Appellate Division applied *Strickland* to the facts of his case in an objectively unreasonable manner. *See Bell v. Cone,* 535 U.S. at 638-99; *see also Yarborough v. Gentry,* 540 U.S. 1, 4 (2003).

A habeas petitioner alleging ineffective assistance of appellate counsel must prove both that: (1) appellate counsel acted objectively unreasonably in failing to raise a particular issue on appeal, and (2) absent counsel's deficient performance, there was a reasonable probability that defendant's appeal would have been successful before the state's highest court. *See Smith v. Robbins,* 528 U.S. 259, 285 (2000). One of the main functions

---

[11] On June 24, 1998, petitioner moved to reargue his *coram nobis* petition. The motion was denied on September 23, 1998.

of appellate counsel is to "winnow [] out weaker arguments on appeal." *Jones,* 463 U.S. at 751 (1983). "[A]ppellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins,* 528 U.S. at 288, *citing Jones,* 463 U.S. at 753. "A petitioner may establish constitutionally inadequate performance if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Mayo v. Henderson,* 13 F.3d 528, 533 (2d Cir. 1994); *see also Robbins,* 528 U.S. at 288 (presumption of effective assistance overcome "only when ignored issues are clearly stronger than those presented"). "Either a federal or a state law claim that was improperly omitted from an appeal may for the basis for an ineffective assistance of appellate counsel claim." *Covington v. Lord,* 275 F.Supp.2d 352, 357 (E.D.N.Y. 2003)(quoting *Mayo v. Henderson,* 13 F.3d 528, 533 (2d Cir. 1994).

### *Right to be Present*

In *People v. Dokes,* 79 N.Y.2d 656 (2d Dep't 1992), the New York Court of Appeals held that under state law, a defendant has a right to be present at all material stages of a trial, including the conduct of a *Sandoval* hearing, except when such presence would be "superfluous". *Id.* at 622. "A violation of this right ordinarily requires reversal even in the absence of a

timely objection." *People v. Favor,* 82 N.Y.2d 254, 258 (N.Y. 1993)(quoting *Dokes,* 79 N.Y.2d at 662).  The New York Court of Appeals's decision in *Dokes* reversed an earlier holding by the Appellate Division, Second Department that a defendant's absence from a *Sandoval* hearing did "not violate his due process right to be present at trial." *People v. Dokes*, 173 A.D.2d 724, 725 (N.Y.A.D. 1991).

In this case, appellate counsel Schneier submitted a lengthy, sixty-nine page appellate brief to the Appellate Division containing fourteen grounds for appeal, each supported by extensive references to the record and citations to relevant case law.  However, a right-to-be-present claim was not raised. Respondent argues that appellate counsel's failure to include the right-to-be-present claim was not professionally unreasonable for the following reasons: (1) at the time the brief was submitted, in May 1993, the New York Court of Appeals had not issued the *Dokes* decision; and (2) the "cover of the official file for defendant's case indicates that defendant was present at court on November 27, 1989, the day of his *Sandoval* hearing."  (Opposition to *Coram Nobis,* Resp. Ex. R, at 3).

Schneier filed his appellate brief on petitioner's behalf in early May 1992 (*See* Affidavit of Appellate Counsel, Resp. Ex. S), approximately one month before the New York Court of Appeals decided *Dokes.*  However, the Second Department did not

issue a final decision affirming petitioner's conviction until
March 15, 1993.  At the time this decision was rendered, the New
York Court of Appeals had already applied the *Dokes* rule to
several cases, ordering reversals of the convictions and new
trials.  *See, e.g., People v. Cruz,* 81 N.Y.2d 738 (N.Y. 1992);
*People v. Gebrosky,* 80 N.Y.2d 995 (N.Y. 1992); *People v. Beasley,*
80 N.Y.2d 981 (N.Y.1992).  Courts have found that in similar
circumstances an attorney's failure to raise important issues on
appeal "by filing a supplemental brief, alerting the court to new
case law...was objectively unreasonable." *Hicks v. United States,*
122 Fed.Appx. 253, 258 (6th Cir. 2005)(finding objectively
unreasonable appellate counsel's failure to raise an *Apprendi*
issue on appeal, where *Apprendi* was decided twelve days after the
appellate brief was filed, but several months before oral
argument was held on the appeal).

If the trial transcript in this case demonstrated
petitioner's absence from the *Sandoval* hearing, then appellate
counsel's failure to raise the claim in a supplemental brief may
have been ineffective, as such a claim would have been a
"significant and obvious issue."  *Mayo,* 13 F.3d at 533.
Petitioner argues that the transcript's cover page for November
27, 1989, the day the *Sandoval* hearing took place, demonstrates
his absence. (*See* Pet. Memo, Point Thirteen).  However, there is
no appreciable difference between the transcript cover page for

the November 27, 1989 proceedings and the cover pages for the
other days of trial. All the cover pages are virtually
identical, and do not lend any factual support to petitioner's
claim of absence. Moreover, "the trial transcript contains no
reference to [Thomas's] absence, either in the form of an
objection by counsel or a notation by the prosecutor." *Hernandez
v. Edwards,* 2001 WL 575594 (S.D.N.Y. 2001)(noting that if "the
trial transcript showed [defendant's] absence, appellate counsel
may have been ineffective for failure to raise the claim.").
Neither petitioner nor his trial counsel "ever made plain on the
trial record that any proceedings had taken place in his
absence." *Turner v. Greiner*, 2000 WL 516509, at *3 (E.D.N.Y.
2000). If anything, a reading of the transcript suggests that
petitioner was present in the courtroom during the *Sandoval*
hearing, because immediately prior to defense counsel's request
to "do the *Sandoval* first," the trial judge stated "get the jury
in." (Tr. 2). On all other occasions where the trial judge
stated "bring the jury in," petitioner was already present in the
courtroom. Petitioner does not contend in his submissions that
he ever informed appellate counsel of his absence from any trial
proceedings.[12]

---

[12] Nor does petitioner assert that he explicitly requested appellate
counsel to raise such a ground on appeal. Although in *Jones v. Barnes*, the
Supreme Court held that "an indigent defendant has no right to compel
appointed counsel to press nonfrivolous points requested by client," Justice
Blackmun noted in his concurrence that "as an *ethical* matter, an attorney
should argue on appeal all nonfrivolous claims upon which his client insists."

In addition, not only is petitioner's claim of absence from the *Sandoval* hearing unsupported by the trial record, but petitioner fails to provide any evidence that supports this claim.  Notably, no where in petitioner's submissions to this Court or to the Appellate Division does he specifically allege that he was absent from the *Sandoval* hearing.  In an affidavit to the Appellate Division, petitioner states "that the record does not establish whether appellant was physically present at his *Sandoval* hearing" (*Coram Nobis* Aff. at 2) and that "the record wholly supports the inference that appellant was not present at his *Sandoval* hearing." (*Id.* at 4).  However, other than these references to the record, petitioner does not state that based on his personal knowledge, he was absent from the *Sandoval* hearing.  Moreover, two letters from family members that petitioner submitted with his *coram nobis* petition make only vague, general statements[13] and fail to show that petitioner was absent from the *Sandoval* hearing.[14]

---

*Jones,* 473 U.S. at 754.

[13] The letters provide only general statements such as "there were several times where Stephen Thomas was not in court to hear is case" (Letter from Kim Woodley, Resp. Ex. Q) and "his lawyer proceeded his case without him a couple of times" (Letter from James Thomas, Resp. Ex. Q).

[14] Petitioner does not request this Court to hold an evidentiary hearing to determine whether he was present at the *Sandoval* hearing.  In any case, under 28 U.S.C. § 2254(e), where a petitioner "has failed to develop the factual basis" of his claim in state court proceedings, a federal court will not itself hold a hearing unless the supporting "factual predicate...could not have been previously discovered through the exercise of due diligence."  A petitioner cannot be said to have "failed to develop a factual basis for his claim unless the undeveloped record is a result of his own decision or

An attorney's performance is "judged on the basis of the facts of the particular case, viewed as of the time of counsel's conduct." *Mayo,* 13 F.3d at 533. As previously noted, Schneier submitted a sixty-nine page appellate brief arguing at least fourteen grounds for appeal, with extensive references to the trial record, demonstrating a careful and thorough review of the relevant documents. Given that nothing in the trial transcript indicates petitioner's absence from the *Sandoval* hearing (and in fact, the transcript suggests otherwise), and as petitioner does not assert that he ever told appellate counsel that he was absent from any trial proceedings, it cannot be said that appellate counsel's failure to include this claim in the original appellate brief or as a supplemental submission was objectively unreasonable under the first prong of *Strickland.* Accordingly, the Appellate Division did not apply *Strickland* in an objectively unreasonable manner.

### CONCLUSION

For the reasons set forth above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied. Moreover, petitioner is denied a certificate of appealability because he has not made "a substantial showing of the denial of a constitutional right." *Reyes v. Keane*, 90 F.3d 676, 680 (2d Cir. 1996).

---

omission." *Drake v. Portuondo,* 321 F.3d 338, 347 (2d Cir. 2003).

The Clerk is directed to enter judgment dismissing the petition and to mail a copy of the within to all parties.

SO ORDERED.

Dated : Brooklyn, New York
April 19, 2005

<u>Signed by Charles P. Sifton</u>
United States District Judge